# JUDGE BUGHWALD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 6962

---------------------------------------------------------------X

**ROSALIND DAVIDOWITZ, LEONARD KATZ
and JONATHAN TURKEL,**

Civil Action No.

**Plaintiffs,**

-against-

**COMPLAINT AND
A JURY DEMAND**

**WILLIAM PATRIDGE,**



AUG 0 5 2008

**Defendant.**

**U.S.D.C. S.D. N.Y.
CASHIERS**

---------------------------------------------------------------X

Plaintiffs Rosalind Davidowitz ("RD"), Leonard Katz ("LK") and Jonathan Turkel ("JT") (hereinafter RD, LK and JT and collectively as the "Plaintiffs") by their attorneys, Ellenoff, Grossman & Schole LLP, as and for their complaint against defendant, William Patridge ("Patridge" or "Defendant") allege as follows:

## Introduction

1.    Plaintiffs bring this action seeking legal and equitable relief (in the form of compensatory damages, an accounting and the imposition of a constructive trust), under various legal theories including breach of contract, specific performance, conversion, unjust enrichment, and injunctive relief and arises out of Defendant's failure to abide by the terms of certain option agreements, dated June 13, 2007, that Defendant entered into with the Plaintiffs (hereinafter the "Option Agreements").

## The Parties

2.    Plaintiffs are individuals whose principal place of business is located at 44 Wall Street, 2nd Floor, New York, New York 10005 and are all citizens of the State of New York.

3.    Upon information and belief, Defendant is an individual and is the Chairman of the Board, President and Chief Executive Officer of ecoSolutions Int'l (formerly known as 360 Interchange, Inc.) (the "Company") whose principal place of business is at 295 East Main Street, Suite #1, Ashland, Oregon 97520 and is a citizen of the State of Oregon.

**Jurisdiction And Venue**

4.    The Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) in that all Plaintiffs and Defendant are citizens of different states. The amount of controversy, exclusive of interest and costs, exceeds $75,000.00.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and because Defendant expressly agreed that the courts located in New York County, New York shall have exclusive jurisdiction in connection with any lawsuit, claim or proceeding related to the Option Agreements.

**Facts Common To All Causes Of Action**

6.    In or about June 2007 Defendant met with J. Morton Davis, Chairman and sole owner of D.H. Blair Investment Banking Corp. ("DHBIB"), and LK, a Vice President of DHBIB, seeking introductions to potential investors in the Company.

7.    As a result of such discussions, on June 13, 2007 Defendant and the Company entered into an agreement with DHBIB pursuant to which DHBIB agreed to introduce to the Company and Defendant potential investors who might invest in the Company (hereinafter the "IB Agreement"). As an inducement to DHBIB's agreeing to provide these services, Defendant agreed to issue to DHBIB and/or its designees five-year options ("Options") to purchase 400,000 shares of the Company's convertible preferred stock owned by Defendant at

2

an exercise price of $1.00 per share. A copy of the IB Agreement is annexed hereto as Exhibit A. The IB Agreement further provided that if the Company issued any additional securities or derivatives ("Additional Securities") to Defendant then the Options would include the right to purchase the same percent of Additional Securities as the Option represented to Defendant's total fully diluted equity ownership interest on the date of the IB Agreement.

8.    Pursuant to the IB Agreement, Patridge issued a total of three Option Agreements to designees of DHBIB, viz., an Option to purchase 380,000 shares of Preferred Stock to RD and an Option to purchase 10,000 shares of Preferred Stock to each of LK and JT. Copies of those Option Agreements are annexed hereto as Exhibits B, C and D. Pursuant to an agreement between DHBIB and Defendant the exercise price of the Options was reduced to $0.10 per share and the Option Agreements which were executed by Defendant provide for such exercise price. The Options are exercisable until June 13, 2012 and can be exercised on a "cashless" basis.

9.    Subsequent to the execution of the IB Agreement and the Option Agreements, DHBIB introduced investors to Defendant and the Company.

10.    On July 8, 2008, each of the Plaintiffs sent Defendant by Federal Express a written notice (hereinafter the "Notices") to request a cashless exercise of their respective Options pursuant to the terms thereof and to convert the shares of Preferred Stock issuable upon exercise of the Options into shares of Common Stock of the Company in accordance with the terms of the Preferred Stock. Copies of such Notices are annexed hereto as Exhibits E, F and G. The Notices were also sent by Federal Express to William Gould, Esq. ("Gould") who, upon information and belief, is the Company's counsel. The Notices were ignored by Defendant.

11.     On July 14, 2008, JT called Defendant by telephone and left messages at both his office and on his cell phone to have Defendant call him concerning the Notices. To date, none of the Plaintiffs has received any response to these calls. In addition, Defendant has failed and refused to comply with the Notices.

12.     On July 14, 2008, JT called Mr. Gould by telephone. Mr. Gould told JT that the Option Agreements were a matter between Plaintiffs and Defendant and that he did not represent Defendant.

13.     Shortly thereafter, on July 17, 2008, Plaintiffs' counsel Ellenoff, Grossman & Schole LLP ("EGS"), sent a letter to Defendant by facsimile and Federal Express demanding that Defendant provide Plaintiffs with the shares of Common Stock of the Company due to Plaintiffs. A copy of the letter is annexed hereto as Exhibit H. The letter provided that if Defendant did not respond by July 22, 2008, Plaintiffs would commence litigation against him. Defendant has never responded to the letter.

14.     To date, Plaintiffs have not received the shares of Common Stock of the Company to which they are entitled and in fact have heard nothing from Defendant.

15.     Each Option Agreement provides that it "shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof". Each Option Agreement further provides that "the parties hereto hereby, irrevocably and unconditionally, consent to the exclusive jurisdiction of the courts located in New York County, New York in connection with any lawsuit claim or other proceeding relating to [the Agreement]". See paragraph (h) of each Option Agreement.

16.     By reason of Defendant's wrongful, illegal and fraudulent conduct, Plaintiffs have been irreparably damaged.

## FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

17.     Plaintiffs repeat and reallege each of and every allegation contained in paragraphs 1 through 16 as if fully set forth herein.

18.     Defendant has breached the Option Agreements by failing and refusing to effect a cashless exercise of Plaintiffs' Options and to immediately convert the Preferred Stock issuable upon such exercise into shares of Common Stock of the Company.

19.     Plaintiffs, and each of them, have fully performed all of the conditions, covenants and conditions required of them on their part to be performed in accordance with the Option Agreements.

20.     Despite due demand, Defendant has failed and refused to comply with the express terms set forth in the Option Agreements and has breached his obligations thereunder. If Plaintiffs had been permitted to exercise the Options pursuant to the Option Agreements, they would have each acquired the following amount of Common Stock of the Company: (1) RD would have acquired 3,763,800 shares, (2) LK would have acquired 99,040 shares and (3) JT would have acquired 99,040 shares.

21.     By reason of the foregoing, Plaintiffs have been damaged, in an amount to be determined at trial, but estimated to be at least Four Million Dollars ($4,000,000.00) collectively, together with applicable interest and costs.

22.     By reason of the foregoing, Plaintiffs are entitled to have judgment against Defendant, in an amount to be determined at trial, but estimated to be at least Four Million Dollars ($4,000,000.00) collectively, together with applicable interest and costs.

5

## SECOND CLAIM FOR RELIEF
## (CONVERSION)

23.     Plaintiffs repeat and reallege each of and every allegation contained in paragraphs 1 through 22 as if fully set forth herein.

24.     In making the demands for the exercise of the Options pursuant to the Option Agreements, Plaintiffs, and each of them were entitled to Common Stock of the Company.

25.     While failing and refusing to comply with Plaintiffs' demands to exercise the Options, Defendant has retained and refused to give the shares of Common Stock of the Company due to Plaintiffs.

26.     By retaining the shares of Common Stock of the Company due to Plaintiffs, Defendant has wrongfully exerted dominion and control over Plaintiffs' property in denial of and inconsistent with Plaintiffs' rights under the Option Agreements.  Defendant has exercised such dominion and control without Plaintiffs' authority or consent and in complete disregard, violation and denial of Plaintiffs' property rights.

27.     By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, but estimated to be at least Four Million Dollars ($4,000,000.00) collectively, together with applicable interest and costs.

28.     By reason of the foregoing, Plaintiffs are entitled to have judgment against Defendant in an amount to be determined at trial, but estimated to be at least Four Million Dollars ($4,000,000.00) collectively, together with applicable interest and costs.

## THIRD CLAIM FOR RELIEF
## (UNJUST ENRICHMENT)

29.     Plaintiffs repeat and reallege each of and every allegation contained in paragraphs1 through 28 as if fully set forth herein.

30.    As set forth above, DHBIB provided Defendant with services pursuant to the IB Agreement. In return for these services, DHBIB and Plaintiffs, and each of them, reasonably expected that Defendant would observe, honor and comply with the Option Agreements.

31.    Instead, Defendant callously failed and refused to observe, honor and comply with his obligations under the Option Agreements and simply withheld the Common Stock of the Company due to Plaintiffs, thereby unjustly enriching himself at Plaintiffs' expense.

32.    By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, but estimated to be at least Four Million Dollars ($4,000,000.00) collectively, together with applicable interest and costs.

33.    By reason of the foregoing, Plaintiffs are entitled to have judgment against Defendant in an amount to be determined at trial, but estimated to be at least Four Million Dollars ($4,000,000.00) collectively, together with applicable interest and costs.

## FOURTH CLAIM FOR RELIEF
### (SPECIFIC PERFOMANCE)

34.    Plaintiffs repeat and reallege each of and every allegation contained in paragraphs 1 through 33 as if fully set forth herein.

35.    By reason of Defendant retaining and refusing to give the shares of Common Stock of the Company due to Plaintiffs, Plaintiffs are entitled to equitable relief ordering Defendants to convert the Plaintiffs' Options pursuant to the Option Agreements.

36.    By reason of the foregoing, Plaintiffs are entitled to an order directing Defendant ordering Defendants to convert the Plaintiffs' Options pursuant to the Option Agreements.

## FIFTH CLAIM FOR RELIEF
## (BREACH OF CONTRACT-ACCOUNTING
## & CONSTRUCTIVE TRUST)

37.     Plaintiffs repeat and reallege each of and every allegation contained in paragraphs 1 through 36 as if fully set forth herein.

38.     Defendant has profited from his wrongful and illegal actions, as set forth above, and his breach of the Option Agreements which has resulted in his unlawful retention of the shares of Common Stock of the Company due to Plaintiffs.

39.     Plaintiffs are therefore entitled to an accounting of all of the shares of Common Stock of the Company and the shares due the Plaintiffs.

40.     Plaintiffs are also entitled to the imposition of a constructive trust against Defendant as he is deemed to hold the shares of Common Stock of the Company due to Plaintiffs in constructive trust for Plaintiffs.

41.     By reason of the foregoing, Plaintiffs are entitled to a judgment ordering an accounting and the imposition of a constructive trust against Defendant.

## SIXTH CLAIM FOR RELIEF
## (INJUNCTIVE RELIEF)

42.     Plaintiffs repeat and reallege each of and every allegation contained in paragraphs1 through 41 as if fully set forth herein.

43.     As a result of Defendant's conduct, Plaintiffs have and will continue to sustain irreparable harm for which Plaintiffs are without an adequate remedy at law.

44.     By reason of the foregoing, Defendant, his agents, employees and assigns, including the Company's stock transfer agent, should be restrained and enjoined from transferring or otherwise selling the Common Stock of the Company due to Plaintiffs pursuant to the Option Agreements, pending the adjudication of this action.

8

45.    By reason of the foregoing, Plaintiffs are entitled to an injunction prohibiting Defendant, his agents, employees and assigns, including the Company's stock transfer agent, from transferring or otherwise selling the Common Stock of the Company due to Plaintiffs pursuant to the Option Agreements, pending the adjudication of this action.

WHEREFORE, Plaintiffs respectfully request the Court to enter a judgment in favor of Plaintiffs and against Defendant as follows:

A.    On the First, Second and Third Claims for Relief, a judgment against Defendant in an amount to be determined at trial, but estimated to be at least Four Million ($4,000,000.00) Dollars collectively, together with applicable interest and costs.

B.    On The Fourth Claim for Relief, a judgment ordering Defendant to convert the Plaintiffs' Options pursuant to the Option Agreements.

C.    On The Fifth Claim for Relief, a judgment ordering an accounting and the imposition of a constructive trust against Defendant.

D.    On the Sixth Claim for Relief, a judgment granting Plaintiffs an injunction prohibiting Defendant, its agents, employees and assigns, including the Company's stock transfer agent, from transferring or otherwise selling the Common Stock of the Company due to Plaintiffs pursuant to the Option Agreements, pending the adjudication of this action.

E.    On all Claims for Relief, a judgment awarding Plaintiffs the costs, disbursements, and reasonable attorneys' fees of this lawsuit; and

F.    For any other and further relief which the Court may deem just and proper.

Dated:      New York, New York
            August 4, 2008

                                        ELLENOFF GROSSMAN & SCHOLE LLP
                                        *Attorneys for Plaintiffs*

                                        By: _____
                                            Anthony Galano, III (AG-9950)
                                        150 East 42nd Street, 11th Floor
                                        New York, New York 10017
                                        (212) 370-1300

To:   William Patridge
      ecoSolutions Intl
      295 East Main Street
      Suite 1
      Ashland, Oregon 97520

**Exhibit A**

# D.H. Blair Investment Banking Corp.
44 Wall Street, 2nd floor
New York, New York 10005

June 13, 2007

Mr. William Patridge
Chairman and President
360 Interchange, Inc.
295 East Main Street, Suite 1
Ashland, OR 97520

Gentlemen:

D.H. Blair Investment Banking Corp. ("Blair") is pleased to act as financial advisor and investment banker to 360 Interchange, Inc. (the "Company") in connection with introducing the Company to potential investors and/or other third parties (collectively, "Third Parties") which might result in a financing ("Financing") for the Company, including the Company's Rule 504 private placement. As used in this letter, the term "financing" shall mean any bank or institutional loan or any private placement or public offering of debt and/or equity securities by the Company. Based on the terms and conditions of this letter, Blair will seek to identify potential Third Parties which might result in a Financing for the Company.

As an inducement to Blair's providing the services referred to above, simultaneously with the execution of this Agreement, William Patridge, the Company's Chairman, President and principal shareholder, shall issue to Blair and/or its designees a five year option (the "Option") to purchase 400,000 shares of the Company's convertible preferred stock owned by Mr. Patridge (the "Preferred Stock") at an exercise price of $1.00 per share. Each share of Preferred Stock is convertible into ten shares of the Company's common stock. The capitalization of the Company as of the date hereof is unchanged from the capitalization of the Company as set forth on the Company's financial statements prepared by Stonefield Josephson, Inc., the Company's independent accountants, dated February 9, 2007. In the event the Company issues any additional equity securities or derivatives thereof to Mr. Patridge (the "Additional Securities"), then Blair's Option shall include the right to purchase the same percentage of such Additional Securities as the Option represents to Mr. Patridge's total fully diluted equity ownership in the Company on the date hereof, at an exercise price equal to the price paid for such Additional Securities by Mr. Patridge. The Option shall contain standard anti-dilution and cashless exercise provisions.

The Company agrees to indemnify Blair and its affiliates and their respective shareholders, directors, officers, employees, agents and controlling persons (Blair and each such person being an "Indemnified Party") from and against any and all losses, claims, damages and liabilities, joint or

several, to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, related to or arising out of any Transaction contemplated by this letter or the engagement of Blair pursuant to, and the performance by Blair of the services contemplated by, this letter and will reimburse any Indemnified Party for all expenses (including, subject to the provisions of the seventh sentence of this paragraph, reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for, or defense of, any pending or threatened claim or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party, provided that the Company shall have the right to control the defense and settlement of any such claim. The Company will assume the defense of such action or proceeding and will employ counsel reasonably satisfactory to Blair and will pay the fees and expenses of such counsel. The Company shall not be liable for any settlement effected without the consent of the Company, which consent shall not be unreasonably withheld, and the Company shall not settle any claim without the consent of Blair, which consent shall not be unreasonably withheld. In addition, the Company further agrees that any settlement entered into by the Company shall include an explicit and unconditional release from the party bringing the claim, action or proceeding of all Indemnified Persons, which release shall be reasonably satisfactory to Blair. Notwithstanding the obligation of the Company to employ counsel in connection with any such action or proceeding, an Indemnified Party will be entitled to employ counsel separate from counsel for the Company and from any other party in such action if such Indemnified Party reasonably determines that representation by counsel chosen by the Company constitutes a conflict on any significant issue between the positions of such Indemnified Party and the Company, or the Company have failed to provide counsel reasonably satisfactory to the Indemnified Party in a timely manner. In such event, the reasonable fees and disbursements of such separate counsel will be paid promptly by the Company. In no event will the Company be responsible for the fees and expenses of more than one counsel (in addition to any necessary local counsel) for all Indemnified Parties at any time in connection with any action or proceeding or separate but substantially similar or related actions or proceedings in the same jurisdiction. The Company will not be liable under the foregoing indemnification provision to the extent that any loss, claim, damage, liability or expense is finally judicially determined to have resulted directly from Blair's gross negligence or intentional misconduct.

The Company and Blair agree that if any indemnification or reimbursement sought pursuant to the preceding paragraph is judicially determined to be unavailable for a reason other than the gross negligence or intentional misconduct of Blair then, whether or not Blair is the Indemnified Person, the Company, on one hand, and Blair, on the other hand, shall contribute to the losses, claims, damages, liabilities and expenses for which such indemnification or reimbursement is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Blair, on the other hand, in connection with the transactions to which such indemnification or reimbursement relates, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative faults of the Company, on the one hand, and Blair, on the other hand, as well as any other equitable considerations; provided, however, that in no event shall the amount to be contributed by Blair pursuant to this paragraph exceed the amount of the fees actually received by Blair hereunder.

2

The Company will furnish Blair with such information as the Company and Blair believe appropriate to the assignment (all such information so furnished being "Information"). The Company recognizes and confirms that Blair (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this letter without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (c) will not make an appraisal of any assets of the Company.

This letter agreement shall be for the initial term of one year commencing upon the date hereof, and thereafter on a month-to-month basis until terminated by the Company or Blair. The parties hereto agree that the provisions relating to the payment of fees and expenses of Blair, the indemnification and contribution provisions and the provisions of the succeeding paragraphs will survive the termination of this agreement for any reason.

Except as required by applicable law, any advice to be provided by Blair under this agreement shall not be disclosed publicly or made available to third parties without the prior written approval of Blair, and accordingly such advice shall not be relied upon by any person or entity other than the Company.

The Company and Blair each represent to the other parties that there is no other person or entity that is entitled to a finder's fee or any type of brokerage commission in connection with the transactions contemplated by this agreement as a result of any agreement or understanding with it.

Additionally, the Company agrees to reimburse Blair promptly upon request made from time to time for its actual out-of-pocket expenses incurred in connection with Blair's engagement hereunder.

Nothing in this agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth herein, the Indemnified Persons, any rights or remedies under or by reason of this agreement or as a result of the services to be rendered by Blair hereunder. The Company further agrees that neither Blair nor any of its controlling persons, affiliates, directors, officers, employees or agents shall have any liability to the Company for any losses, claims, damages, liabilities or expenses arising out of or relating to this agreement or the services to be rendered by Blair hereunder, unless it is finally judicially determined that such losses, claims, damages, liabilities or expenses resulted directly from the gross negligence or willful misconduct of Blair.

The invalidity or unenforceability of any provision of this agreement shall not affect the validity or enforceability of any other provision of this agreement, which shall remain in full force and effect.

This agreement may not be amended or modified except in writing signed by each of the parties and shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to principles of conflict of laws. The Company and Blair hereby

3

irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States District Courts located in the City of New York, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such lawsuit, claim or other proceeding brought in any such court has been brought in an inconvenient forum. Any right to trial by jury with respect to this agreement or the services to be rendered by Blair hereunder is expressly and irrevocably waived. The service of any notice, process, motion or other document in connection with any lawsuit, claim or other proceeding arising out of or relating to this agreement may be effected by registered mail, return receipt requested, if to the Company, to the Company's address set forth herein (or to such other address as the Company may provide in writing to Blair) or, if to Blair, to D.H. Blair Investment Banking Corp., 44 Wall Street, 2nd Floor, New York, New York 10005, Attention: Jonathan Turkel, Esq. or to such other address as Blair may provide in writing to the Company.)

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blair the duplicate copy of this letter enclosed herewith.

Very truly yours,

D.H. BLAIR INVESTMENT BANKING CORP.

By: _____
J. Morton Davis
Chairman

Accepted and Agreed
to as of the date first
written above:

360 INTERCHANGE, INC.

By: _____
William Patridge
President

_____
WILLIAM PATRIDGE, individually

4

Exhibit B

## OPTION TO PURCHASE PREFERRED STOCK

### OF

### 360 INTERCHANGE, INC.

This is to Certify that Rosalind Davidowitz or assigns ("Holder"), is entitled to purchase, subject to the provisions of this Option, from William Patridge ("Patridge") 380,000 shares of fully paid, validly issued and nonassessable shares of convertible preferred stock ("Preferred Stock") of 360 Interchange, Inc. (the "Company") at an exercise price of $0.10 (ten cents) per share, at any time or from time to time, from the date hereof until June 13, 2012 ("Exercise Period") subject to adjustment as set forth herein. The number of shares of Preferred Stock to be received upon the exercise of this Option and the price to be paid for each share of Preferred Stock may be adjusted from time to time as hereinafter set forth. The shares of Preferred Stock deliverable upon such exercise, and as adjusted from time to time, are hereinafter sometimes referred to as "Option Shares" and the exercise price of a share of Preferred Stock in effect at any time and as adjusted from time to time is hereinafter sometimes referred to as the "Exercise Price". In the event the Company issues to Patridge any additional equity securities or securities exchangeable or convertible into any such equity securities or any options, warrants or rights with respect to the any of the foregoing (collectively, "Additional Securities") then this Option shall include the right to purchase the same percentage of such Additional Securities as this Option represents to Patridge's total fully diluted equity interest in the Company on the date hereof, at any exercise price (with respect to such Additional Securities) equal to the price paid for such Additional Securities by Patridge and the term "Option Shares" shall include the Holder's portion of such Additional Securities.

(a)    EXERCISE OF OPTION

(1)    This Option may be exercised in whole or in part at any time or from time to time during the Exercise Period; provided, however, that in the event of any merger, consolidation or sale of substantially all the assets of the Company as an entirety, resulting in any distribution to the Company's stockholders, the Holder shall have the right to exercise this Option commencing at such time into the kind and amount of shares of stock and other securities and property (including cash) receivable by a holder of the number of shares of Preferred Stock (or the shares of Common Stock of the Company ("Common Stock") issuable upon the conversion of the Preferred Stock ) into which this Option might have been exercisable immediately prior thereto. As soon as practicable after each such exercise of the Option, but not later than seven (7) days following the receipt of good and available funds, Patridge shall cause the Company to issue and deliver to the Holder a certificate or certificate for the Option Shares issuable upon such exercise, registered in the name of the Holder or his designee. If this Option should be exercised in part only, the Option shall continue to represent an option by the Holder to purchase the balance of the Option Shares purchasable thereunder.

(2)    At any time during the Exercise Period, the Holder may, at its option, exercise this Option on a cashless basis by exchanging this Option, in whole or in part (an

"Option Exchange"), into the number of Option Shares determined in accordance with this Section (a)(2), by surrendering this Option to Patridge, accompanied by a notice stating the Holder's intent to effect such exchange, the number of Option Shares to be exchanged and the date on which the Holder requests that such Option Exchange occur (the "Notice of Exchange"). The Option Exchange shall take place on the date specified in the Notice of Exchange (the "Exchange Date"). Certificates for the shares issuable upon such Option Exchange and, if applicable, a new option of like tenor evidencing the balance of the shares remaining subject to this Option, shall be issued as of the Exchange Date and delivered to the Holder within seven (7) days following the Exchange Date. In the event of a "cashless exercise" pursuant to this section (a)(2) the Holder will receive shares of Preferred Stock equal to the current market value (as determined below) of the portion of this Option then being exercised, in which event Patridge shall transfer to the Holder (and shall cause the Company to issue to Holder a certificate representing) the number of shares of Preferred Stock determined by using the following formula:

$$X = \frac{Y(A-B)}{A}$$

Where:  $X =$  the number of shares of Preferred Stock to be issued to the Holder under the provisions of this Section (a) 2

$Y =$  the number of shares of Preferred Stock that would otherwise be issued upon such exercise, taking into account previously issued shares under this Option

$A =$  the current market value (as hereinafter defined) of one share of Common Stock

$B =$  the Exercise Price divided by the number of shares of Common Stock issuable upon conversion of each share of Preferred Stock

Current market value shall have the meaning set forth Section (c) below, except that for purposes hereof, the date of exercise, as used in such Section (c), shall mean the date of the Notice of Exchange.

(b)    REPRESENTATIONS, WARRANTIES AND COVENANTS OF PATRIDGE. Patridge represents, warrants and covenants to Holder that (i) on the date hereof, and during the period this Option (or any portion thereof) remains outstanding, he is, and will be, the legal, record and beneficial owner of the Option Shares (and all securities issuable upon the conversion of the Option Shares), and he has and will have, good and valid title to the Option Shares (and all securities issuable upon conversion of the Option Shares) free and clear of all mortgages, pledges, liens, security interests, conditional sales agreements, charges, encumbrances and restrictions of every kind and nature, (ii) the Option Shares were duly and validly issued, fully paid and nonassessable, and are not subject to any preemptive rights, (iii) the shares of Common Stock issuable upon conversion of the Preferred Stock will, upon such conversion, be duly and validly issued, fully paid and nonassessable and not subject to any preemptive rights, (iv)

2

Patridge will cause the Company at all times to reserve for issuance and/or delivery upon the exercise of the Option Shares, such number of shares of the Company's Common Stock as shall be required for issuance and delivery upon the conversion of the Option Shares, (v) the Holder shall have the same registration rights with respect to the Holder's Option Shares (and the shares of Common Stock issuable upon the conversion thereof) as Patridge has with respect to his shares of Preferred Stock (and the shares of Common Stock issuable upon the conversion thereof), (vi) each share of Preferred Stock is currently convertible for no additional consideration, into ten (10) shares of Common Stock and (vii) the capitalization of the Company on the date hereof is unchanged from the capitalization of the Company as set forth in its financial statements dated February 9, 2007 prepared by Stonefield Josephson, Inc., the Company's independent accountants.

    (c)    FRACTIONAL SHARES. No fractional shares or script representing fractional shares shall be issued upon the exercise of this Option. With respect to any fraction of a share called for upon any exercise hereof, Patridge shall pay to the Holder an amount in cash equal to such fraction multiplied by the current market value of a share, determined as follows:

    (1)    If the Common Stock is listed on a national securities exchange or admitted to unlisted trading privileges on such exchange or listed for trading on the Nasdaq National Market, the current market value shall be the last reported sale price of the Common Stock on such exchange or market on the last business day prior to the date of exercise of this Option or if no such sale is made on such day, the average of the closing bid and asked prices for such day on such exchange or market; or

    (2)    If the Common Stock is not so listed or admitted to unlisted trading privileges, but is traded on the Nasdaq SmallCap Market, the current market value shall be the last reported sales price of the Common Stock on the NASDAQ Smallcap Market on the last business day prior to the exercise of this Option or if no such sale is made on such day, the average of the closing bid and asked prices for such day on such market and if the Common Stock is not so traded, the current market value shall be the last reported sales price on the NASD Electronic Bulletin Board on the last business day prior to the exercise of this Option or, if no such sale is made on such day, the average of the closing bid and asked prices for such day reported on the NASD Electronic Bulletin Board and if the Common Stock is not so traded, the current market value shall be the last reported sales price on Pink Sheets, LLC on the last business day prior to the exercise of this Option, or if no such sale is made on such day, the average of the closing bid and asked prices for such day reported by Pink Sheets, LLC; or

    (3)    If the Common Stock is not so listed or admitted to unlisted trading privileges and bid and asked prices are not so reported, the current market value shall be an amount equal to the last sale price of a share of Common Stock in a private transaction.

    (d)    ANTI-DILUTION PROVISIONS. The Exercise Price in effect at any time and the number and kind of securities purchasable upon the exercise of this Option shall be subject to

3

the same anti-dilution adjustments applicable to the Preferred Stock, Common Stock and Additional Securities owned by Patridge. Whenever Patridge shall receive notice of any event which requires an adjustment in the Exercise Price or the number of Option Shares he shall mail by certified mail to the Holder a copy of such notice within five (5) days after he receives such notice from the Company.

     (e)    NOTICES TO OPTION HOLDER. So long as this Option shall be outstanding, (i) if the Company shall pay any dividend or make any distribution upon the Common Stock or Preferred Stock or (ii) if the Company shall offer to the holders of Preferred Stock or Common Stock for subscription or purchase by them any share of any class or any other rights or (iii) if any capital reorganization of the Company, reclassification of the capital stock of the Company, consolidation or merger of the Company with or into another corporation, sale, lease or transfer of all or substantially all of the property and assets of the Company to another corporation, or voluntary or involuntary dissolution, liquidation or winding up of the Company shall be effected, then in any such case, Patridge shall cause the Company to mail by certified mail to the Holder, at least fifteen days prior the date specified in (x) or (y) below, as the case may be, a notice containing a brief description of the proposed action and stating the date on which (x) a record is to be taken for the purpose of such dividend, distribution or rights, or (y) such reclassification, reorganization, consolidation, merger, conveyance, lease, dissolution, liquidation or winding up is to take place and the date, if any is to be fixed, as of which the holders of Preferred Stock, Common Stock or other securities shall receive cash or other property deliverable upon such reclassification, reorganization, consolidation, merger, conveyance, dissolution, liquidation or winding up.

     (f)    RECLASSIFICATION, REORGANIZATION OR MERGER. In case of any reclassification, capital reorganization or other change of outstanding shares of Preferred Stock or Common Stock of the Company, or in case of any consolidation or merger of the Company with or into another corporation (other than a merger with a subsidiary in which merger the Company is the continuing corporation and which does not result in any reclassification, capital reorganization or other change of outstanding shares of Preferred Stock or Common Stock of the class issuable upon exercise of this Option) or in case of any sale, lease or conveyance to another corporation of the property of the Company as an entirety, Patridge shall cause the Company, as a condition precedent to such transaction, to effectuate provisions to be made so that the Holder shall have the right thereafter by exercising this Option at any time prior to the expiration of the Option, to purchase the kind and amount of shares of stock and other securities and property receivable upon such reclassification, capital reorganization and other change, consolidation, merger, sale or conveyance by a holder of the number of shares of Preferred Stock or Common Stock which might have been purchased upon exercise of this Option immediately prior to such reclassification, change, consolidation, merger, sale or conveyance. Any such provision shall include provision for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Option. The foregoing provisions of this Section (f) shall similarly apply to successive reclassifications, capital reorganizations and changes of shares of Preferred Stock or Common Stock and to successive consolidations, mergers, sales or conveyances.

     (g)    AMENDMENTS. This Option may only be amended in writing signed by both Patridge and the Holder.

(h)    MISCELLANEOUS.    This Option shall be governed by and construed in accordance with the laws of the State of New York without going effect to the conflict of laws principles thereof.  The parties hereto hereby, irrevocably and unconditionally, consent to the exclusive jurisdiction of the courts located in New York County, New York in connection with any lawsuit, claim or other proceeding related to this Option.  This Option may be executed in counterparts.  Facsimile signatures to this Option shall have the same legal validity as original signatures hereto.  All notices or other communications hereunder shall be in writing and shall be sent by hand or by registered or certified mail, return receipt required or by a recognized overnight courier service; if intended for Patridge shall be addressed to Patridge at 295 East Main Street, Suite 1, Ashland, Oregon 97520 or to such other address of which Patridge shall have given notice to the Holder in the manner herein provided; and if intended for the Holder shall be addressed to him at, 44 Wall Street, 2nd Floor, New York, New York 10005 or to such other address of which Holder shall have given notice to Patridge in the manner herein provided. Any such notice shall be effective, immediately if delivered by hand, one (1) business day after delivery to a recognized overnight courier service or three (3) business days after delivery to the U.S. mail system.  This Option shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.


_____
WILLIAM PATRIDGE


_____
ROSALIND DAVIDOWITZ


Dated: June 13, 2007

5

Exhibit C

# OPTION TO PURCHASE PREFERRED STOCK

## OF

## 360 INTERCHÁNGE, INC.

This is to Certify that Leonard Katz or assigns ("Holder"), is entitled to purchase, subject to the provisions of this Option, from William Patridge ("Patridge") 10,000 shares of fully paid, validly issued and nonassessable shares of convertible preferred stock ("Preferred Stock") of 360 Interchange, Inc. (the "Company") at an exercise price of $0.10 (ten cents) per share, at any time or from time to time, from the date hereof until June 13, 2012 ("Exercise Period") subject to adjustment as set forth herein. The number of shares of Preferred Stock to be received upon the exercise of this Option and the price to be paid for each share of Preferred Stock may be adjusted from time to time as hereinafter set forth. The shares of Preferred Stock deliverable upon such exercise, and as adjusted from time to time, are hereinafter sometimes referred to as "Option Shares" and the exercise price of a share of Preferred Stock in effect at any time and as adjusted from time to time is hereinafter sometimes referred to as the "Exercise Price". In the event the Company issues to Patridge any additional equity securities or securities exchangeable or convertible into any such equity securities or any options, warrants or rights with respect to the any of the foregoing (collectively, "Additional Securities") then this Option shall include the right to purchase the same percentage of such Additional Securities as this Option represents to Patridge's total fully diluted equity interest in the Company on the date hereof, at any exercise price (with respect to such Additional Securities) equal to the price paid for such Additional Securities by Patridge and the term "Option Shares" shall include the Holder's portion of such Additional Securities.

(a)    EXERCISE OF OPTION

(1)    This Option may be exercised in whole or in part at any time or from time to time during the Exercise Period; provided, however, that in the event of any merger, consolidation or sale of substantially all the assets of the Company as an entirety, resulting in any distribution to the Company's stockholders, the Holder shall have the right to exercise this Option commencing at such time into the kind and amount of shares of stock and other securities and property (including cash) receivable by a holder of the number of shares of Preferred Stock (or the shares of Common Stock of the Company ("Common Stock") issuable upon the conversion of the Preferred Stock ) into which this Option might have been exercisable immediately prior thereto. As soon as practicable after each such exercise of the Option, but not later than seven (7) days following the receipt of good and available funds, Patridge shall cause the Company to issue and deliver to the Holder a certificate or certificate for the Option Shares issuable upon such exercise, registered in the name of the Holder or his designee. If this Option should be exercised in part only, the Option shall continue to represent an option by the Holder to purchase the balance of the Option Shares purchasable thereunder.

(2)    At any time during the Exercise Period, the Holder may, at its option, exercise this Option on a cashless basis by exchanging this Option, in whole or in part (an

"Option Exchange"), into the number of Option Shares determined in accordance with this Section (a)(2), by surrendering this Option to Patridge, accompanied by a notice stating the Holder's intent to effect such exchange, the number of Option Shares to be exchanged and the date on which the Holder requests that such Option Exchange occur (the "Notice of Exchange"). The Option Exchange shall take place on the date specified in the Notice of Exchange (the "Exchange Date"). Certificates for the shares issuable upon such Option Exchange and, if applicable, a new option of like tenor evidencing the balance of the shares remaining subject to this Option, shall be issued as of the Exchange Date and delivered to the Holder within seven (7) days following the Exchange Date. In the event of a "cashless exercise" pursuant to this section (a)(2) the Holder will receive shares of Preferred Stock equal to the current market value (as determined below) of the portion of this Option then being exercised, in which event Patridge shall transfer to the Holder (and shall cause the Company to issue to Holder a certificate representing) the number of shares of Preferred Stock determined by using the following formula:

$$X = \frac{Y (A-B)}{A}$$

| Where: | $X =$ | the number of shares of Preferred Stock to be issued to the Holder under the provisions of this Section (a) 2 |
| --- | --- | --- |
| | $Y =$ | the number of shares of Preferred Stock that would otherwise be issued upon such exercise, taking into account previously issued shares under this Option |
| | $A =$ | the current market value (as hereinafter defined) of one share of Common Stock |
| | $B =$ | the Exercise Price divided by the number of shares of Common Stock issuable upon conversion of each share of Preferred Stock |

Current market value shall have the meaning set forth Section (c) below, except that for purposes hereof, the date of exercise, as used in such Section (c), shall mean the date of the Notice of Exchange.

(b)    REPRESENTATIONS, WARRANTIES AND COVENANTS OF PATRIDGE. Patridge represents, warrants and covenants to Holder that (i) on the date hereof, and during the period this Option (or any portion thereof) remains outstanding, he is, and will be, the legal, record and beneficial owner of the Option Shares (and all securities issuable upon the conversion of the Option Shares), and he has and will have, good and valid title to the Option Shares (and all securities issuable upon conversion of the Option Shares) free and clear of all mortgages, pledges, liens, security interests, conditional sales agreements, charges, encumbrances and restrictions of every kind and nature, (ii) the Option Shares were duly and validly issued, fully paid and nonassessable, and are not subject to any preemptive rights, (iii) the shares of Common Stock issuable upon conversion of the Preferred Stock will, upon such conversion, be duly and validly issued, fully paid and nonassessable and not subject to any preemptive rights, (iv)

Patridge will cause the Company at all times to reserve for issuance and/or delivery upon the exercise of the Option Shares, such number of shares of the Company's Common Stock as shall be required for issuance and delivery upon the conversion of the Option Shares, (v) the Holder shall have the same registration rights with respect to the Holder's Option Shares (and the shares of Common Stock issuable upon the conversion thereof) as Patridge has with respect to his shares of Preferred Stock (and the shares of Common Stock issuable upon the conversion thereof), (vi) each share of Preferred Stock is currently convertible for no additional consideration, into ten (10) shares of Common Stock and (vii) the capitalization of the Company on the date hereof is unchanged from the capitalization of the Company as set forth in its financial statements dated February 9, 2007 prepared by Stonefield Josephson, Inc., the Company's independent accountants.

(c)    FRACTIONAL SHARES. No fractional shares or script representing fractional shares shall be issued upon the exercise of this Option. With respect to any fraction of a share called for upon any exercise hereof, Patridge shall pay to the Holder an amount in cash equal to such fraction multiplied by the current market value of a share, determined as follows:

(1)    If the Common Stock is listed on a national securities exchange or admitted to unlisted trading privileges on such exchange or listed for trading on the Nasdaq National Market, the current market value shall be the last reported sale price of the Common Stock on such exchange or market on the last business day prior to the date of exercise of this Option or if no such sale is made on such day, the average of the closing bid and asked prices for such day on such exchange or market; or

(2)    If the Common Stock is not so listed or admitted to unlisted trading privileges, but is traded on the Nasdaq SmallCap Market, the current market value shall be the last reported sales price of the Common Stock on the NASDAQ Smallcap Market on the last business day prior to the exercise of this Option or if no such sale is made on such day, the average of the closing bid and asked prices for such day on such market and if the Common Stock is not so traded, the current market value shall be the last reported sales price on the NASD Electronic Bulletin Board on the last business day prior to the exercise of this Option or, if no such sale is made on such day, the average of the closing bid and asked prices for such day reported on the NASD Electronic Bulletin Board and if the Common Stock is not so traded, the current market value shall be the last reported sales price on Pink Sheets, LLC on the last business day prior to the exercise of this Option, or if no such sale is made on such day, the average of the closing bid and asked prices for such day reported by Pink Sheets, LLC; or

(3)    If the Common Stock is not so listed or admitted to unlisted trading privileges and bid and asked prices are not so reported, the current market value shall be an amount equal to the last sale price of a share of Common Stock in a private transaction.

(d)    ANTI-DILUTION PROVISIONS. The Exercise Price in effect at any time and the number and kind of securities purchasable upon the exercise of this Option shall be subject to

the same anti-dilution adjustments applicable to the Preferred Stock, Common Stock and Additional Securities owned by Patridge. Whenever Patridge shall receive notice of any event which requires an adjustment in the Exercise Price or the number of Option Shares he shall mail by certified mail to the Holder a copy of such notice within five (5) days after he receives such notice from the Company.

(e)    NOTICES TO OPTION HOLDER. So long as this Option shall be outstanding, (i) if the Company shall pay any dividend or make any distribution upon the Common Stock or Preferred Stock or (ii) if the Company shall offer to the holders of Preferred Stock or Common Stock for subscription or purchase by them any share of any class or any other rights or (iii) if any capital reorganization of the Company, reclassification of the capital stock of the Company, consolidation or merger of the Company with or into another corporation, sale, lease or transfer of all or substantially all of the property and assets of the Company to another corporation, or voluntary or involuntary dissolution, liquidation or winding up of the Company shall be effected, then in any such case, Patridge shall cause the Company to mail by certified mail to the Holder, at least fifteen days prior the date specified in (x) or (y) below, as the case may be, a notice containing a brief description of the proposed action and stating the date on which (x) a record is to be taken for the purpose of such dividend, distribution or rights, or (y) such reclassification, reorganization, consolidation, merger, conveyance, lease, dissolution, liquidation or winding up is to take place and the date, if any is to be fixed, as of which the holders of Preferred Stock, Common Stock or other securities shall receive cash or other property deliverable upon such reclassification, reorganization, consolidation, merger, conveyance, dissolution, liquidation or winding up.

(f)    RECLASSIFICATION, REORGANIZATION OR MERGER. In case of any reclassification, capital reorganization or other change of outstanding shares of Preferred Stock or Common Stock of the Company, or in case of any consolidation or merger of the Company with or into another corporation (other than a merger with a subsidiary in which merger the Company is the continuing corporation and which does not result in any reclassification, capital reorganization or other change of outstanding shares of Preferred Stock or Common Stock of the class issuable upon exercise of this Option) or in case of any sale, lease or conveyance to another corporation of the property of the Company as an entirety, Patridge shall cause the Company, as a condition precedent to such transaction, to effectuate provisions to be made so that the Holder shall have the right thereafter by exercising this Option at any time prior to the expiration of the Option, to purchase the kind and amount of shares of stock and other securities and property receivable upon such reclassification, capital reorganization and other change, consolidation, merger, sale or conveyance by a holder of the number of shares of Preferred Stock or Common Stock which might have been purchased upon exercise of this Option immediately prior to such reclassification, change, consolidation, merger, sale or conveyance. Any such provision shall include provision for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Option. The foregoing provisions of this Section (f) shall similarly apply to successive reclassifications, capital reorganizations and changes of shares of Preferred Stock or Common Stock and to successive consolidations, mergers, sales or conveyances.

(g)    AMENDMENTS. This Option may only be amended in writing signed by both Patridge and the Holder.

(h)    MISCELLANEOUS.    This Option shall be governed by and construed in accordance with the laws of the State of New York without going effect to the conflict of laws principles thereof.  The parties hereto hereby, irrevocably and unconditionally, consent to the exclusive jurisdiction of the courts located in New York County, New York in connection with any lawsuit, claim or other proceeding related to this Option.  This Option may be executed in counterparts.  Facsimile signatures to this Option shall have the same legal validity as original signatures hereto.  All notices or other communications hereunder shall be in writing and shall be sent by hand or by registered or certified mail, return receipt required or by a recognized overnight courier service; if intended for Patridge shall be addressed to Patridge at 295 East Main Street, Suite 1, Ashland, Oregon 97520 or to such other address of which Patridge shall have given notice to the Holder in the manner herein provided; and if intended for the Holder shall be addressed to him at, 44 Wall Street, 2nd Floor, New York, New York 10005 or to such other address of which Holder shall have given notice to Patridge in the manner herein provided. Any such notice shall be effective, immediately if delivered by hand, one (1) business day after delivery to a recognized overnight courier service or three (3) business days after delivery to the U.S. mail system.  This Option shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.


_____
WILLIAM PATRIDGE


_____
LEONARD KATZ


**Dated: June 13, 2007**

5

Exhibit D

# OPTION TO PURCHASE PREFERRED STOCK

## OF

## 360 INTERCHANGE, INC.

This is to Certify that Jonathan Turkel or assigns ("Holder"), is entitled to purchase, subject to the provisions of this Option, from William Patridge ("Patridge") 10,000 shares of fully paid, validly issued and nonassessable shares of convertible preferred stock ("Preferred Stock") of 360 Interchange, Inc. (the "Company") at an exercise price of $0.10 (ten cents) per share, at any time or from time to time, from the date hereof until June 13, 2012 ("Exercise Period") subject to adjustment as set forth herein. The number of shares of Preferred Stock to be received upon the exercise of this Option and the price to be paid for each share of Preferred Stock may be adjusted from time to time as hereinafter set forth. The shares of Preferred Stock deliverable upon such exercise, and as adjusted from time to time, are hereinafter sometimes referred to as "Option Shares" and the exercise price of a share of Preferred Stock in effect at any time and as adjusted from time to time is hereinafter sometimes referred to as the "Exercise Price". In the event the Company issues to Patridge any additional equity securities or securities exchangeable or convertible into any such equity securities or any options, warrants or rights with respect to the any of the foregoing (collectively, "Additional Securities") then this Option shall include the right to purchase the same percentage of such Additional Securities as this Option represents to Patridge's total fully diluted equity interest in the Company on the date hereof, at any exercise price (with respect to such Additional Securities) equal to the price paid for such Additional Securities by Patridge and the term "Option Shares" shall include the Holder's portion of such Additional Securities.

(a)    EXERCISE OF OPTION

(1)    This Option may be exercised in whole or in part at any time or from time to time during the Exercise Period; provided, however, that in the event of any merger, consolidation or sale of substantially all the assets of the Company as an entirety, resulting in any distribution to the Company's stockholders, the Holder shall have the right to exercise this Option commencing at such time into the kind and amount of shares of stock and other securities and property (including cash) receivable by a holder of the number of shares of Preferred Stock (or the shares of Common Stock of the Company ("Common Stock") issuable upon the conversion of the Preferred Stock ) into which this Option might have been exercisable immediately prior thereto. As soon as practicable after each such exercise of the Option, but not later than seven (7) days following the receipt of good and available funds, Patridge shall cause the Company to issue and deliver to the Holder a certificate or certificate for the Option Shares issuable upon such exercise, registered in the name of the Holder or his designee. If this Option should be exercised in part only, the Option shall continue to represent an option by the Holder to purchase the balance of the Option Shares purchasable thereunder.

(2)    At any time during the Exercise Period, the Holder may, at its option, exercise this Option on a cashless basis by exchanging this Option, in whole or in part (an

"Option Exchange"), into the number of Option Shares determined in accordance with this Section (a)(2), by surrendering this Option to Patridge, accompanied by a notice stating the Holder's intent to effect such exchange, the number of Option Shares to be exchanged and the date on which the Holder requests that such Option Exchange occur (the "Notice of Exchange"). The Option Exchange shall take place on the date specified in the Notice of Exchange (the "Exchange Date"). Certificates for the shares issuable upon such Option Exchange and, if applicable, a new option of like tenor evidencing the balance of the shares remaining subject to this Option, shall be issued as of the Exchange Date and delivered to the Holder within seven (7) days following the Exchange Date. In the event of a "cashless exercise" pursuant to this section (a)(2) the Holder will receive shares of Preferred Stock equal to the current market value (as determined below) of the portion of this Option then being exercised, in which event Patridge shall transfer to the Holder (and shall cause the Company to issue to Holder a certificate representing) the number of shares of Preferred Stock determined by using the following formula:

$$X = \frac{Y\,(A-B)}{A}$$

Where:

X =      the number of shares of Preferred Stock to be issued to the Holder under the provisions of this Section (a) 2

Y =      the number of shares of Preferred Stock that would otherwise be issued upon such exercise, taking into account previously issued shares under this Option

A =      the current market value (as hereinafter defined) of one share of Common Stock

B =      the Exercise Price divided by the number of shares of Common Stock issuable upon conversion of each share of Preferred Stock

Current market value shall have the meaning set forth Section (c) below, except that for purposes hereof, the date of exercise, as used in such Section (c), shall mean the date of the Notice of Exchange.

(b)      REPRESENTATIONS, WARRANTIES AND COVENANTS OF PATRIDGE. Patridge represents, warrants and covenants to Holder that (i) on the date hereof, and during the period this Option (or any portion thereof) remains outstanding, he is, and will be, the legal, record and beneficial owner of the Option Shares (and all securities issuable upon the conversion of the Option Shares), and he has and will have, good and valid title to the Option Shares (and all securities issuable upon conversion of the Option Shares) free and clear of all mortgages, pledges, liens, security interests, conditional sales agreements, charges, encumbrances and restrictions of every kind and nature, (ii) the Option Shares were duly and validly issued, fully paid and nonassessable, and are not subject to any preemptive rights, (iii) the shares of Common Stock issuable upon conversion of the Preferred Stock will, upon such conversion, be duly and validly issued, fully paid and nonassessable and not subject to any preemptive rights, (iv)

2

Patridge will cause the Company at all times to reserve for issuance and/or delivery upon the exercise of the Option Shares, such number of shares of the Company's Common Stock as shall be required for issuance and delivery upon the conversion of the Option Shares, (v) the Holder shall have the same registration rights with respect to the Holder's Option Shares (and the shares of Common Stock issuable upon the conversion thereof) as Patridge has with respect to his shares of Preferred Stock (and the shares of Common Stock issuable upon the conversion thereof), (vi) each share of Preferred Stock is currently convertible for no additional consideration, into ten (10) shares of Common Stock and (vii) the capitalization of the Company on the date hereof is unchanged from the capitalization of the Company as set forth in its financial statements dated February 9, 2007 prepared by Stonefield Josephson, Inc., the Company's independent accountants.

(c)    FRACTIONAL SHARES.  No fractional shares or script representing fractional shares shall be issued upon the exercise of this Option.  With respect to any fraction of a share called for upon any exercise hereof, Patridge shall pay to the Holder an amount in cash equal to such fraction multiplied by the current market value of a share, determined as follows:

(1)    If the Common Stock is listed on a national securities exchange or admitted to unlisted trading privileges on such exchange or listed for trading on the Nasdaq National Market, the current market value shall be the last reported sale price of the Common Stock on such exchange or market on the last business day prior to the date of exercise of this Option or if no such sale is made on such day, the average of the closing bid and asked prices for such day on such exchange or market; or

(2)    If the Common Stock is not so listed or admitted to unlisted trading privileges, but is traded on the Nasdaq SmallCap Market, the current market value shall be the last reported sales price of the Common Stock on the NASDAQ Smallcap Market on the last business day prior to the exercise of this Option or if no such sale is made on such day, the average of the closing bid and asked prices for such day on such market and if the Common Stock is not so traded, the current market value shall be the last reported sales price on the NASD Electronic Bulletin Board on the last business day prior to the exercise of this Option or, if no such sale is made on such day, the average of the closing bid and asked prices for such day reported on the NASD Electronic Bulletin Board and if the Common Stock is not so traded, the current market value shall be the last reported sales price on Pink Sheets, LLC on the last business day prior to the exercise of this Option, or if no such sale is made on such day, the average of the closing bid and asked prices for such day reported by Pink Sheets, LLC; or

(3)    If the Common Stock is not so listed or admitted to unlisted trading privileges and bid and asked prices are not so reported, the current market value shall be an amount equal to the last sale price of a share of Common Stock in a private transaction.

(d)    ANTI-DILUTION PROVISIONS.  The Exercise Price in effect at any time and the number and kind of securities purchasable upon the exercise of this Option shall be subject to

the same anti-dilution adjustments applicable to the Preferred Stock, Common Stock and Additional Securities owned by Patridge. Whenever Patridge shall receive notice of any event which requires an adjustment in the Exercise Price or the number of Option Shares he shall mail by certified mail to the Holder a copy of such notice within five (5) days after he receives such notice from the Company.

(e)    NOTICES TO OPTION HOLDER. So long as this Option shall be outstanding, (i) if the Company shall pay any dividend or make any distribution upon the Common Stock or Preferred Stock or (ii) if the Company shall offer to the holders of Preferred Stock or Common Stock for subscription or purchase by them any share of any class or any other rights or (iii) if any capital reorganization of the Company, reclassification of the capital stock of the Company, consolidation or merger of the Company with or into another corporation, sale, lease or transfer of all or substantially all of the property and assets of the Company to another corporation, or voluntary or involuntary dissolution, liquidation or winding up of the Company shall be effected, then in any such case, Patridge shall cause the Company to mail by certified mail to the Holder, at least fifteen days prior the date specified in (x) or (y) below, as the case may be, a notice containing a brief description of the proposed action and stating the date on which (x) a record is to be taken for the purpose of such dividend, distribution or rights, or (y) such reclassification, reorganization, consolidation, merger, conveyance, lease, dissolution, liquidation or winding up is to take place and the date, if any is to be fixed, as of which the holders of Preferred Stock, Common Stock or other securities shall receive cash or other property deliverable upon such reclassification, reorganization, consolidation, merger, conveyance, dissolution, liquidation or winding up.

(f)    RECLASSIFICATION, REORGANIZATION OR MERGER. In case of any reclassification, capital reorganization or other change of outstanding shares of Preferred Stock or Common Stock of the Company, or in case of any consolidation or merger of the Company with or into another corporation (other than a merger with a subsidiary in which merger the Company is the continuing corporation and which does not result in any reclassification, capital reorganization or other change of outstanding shares of Preferred Stock or Common Stock of the class issuable upon exercise of this Option) or in case of any sale, lease or conveyance to another corporation of the property of the Company as an entirety, Patridge shall cause the Company, as a condition precedent to such transaction, to effectuate provisions to be made so that the Holder shall have the right thereafter by exercising this Option at any time prior to the expiration of the Option, to purchase the kind and amount of shares of stock and other securities and property receivable upon such reclassification, capital reorganization and other change, consolidation, merger, sale or conveyance by a holder of the number of shares of Preferred Stock or Common Stock which might have been purchased upon exercise of this Option immediately prior to such reclassification, change, consolidation, merger, sale or conveyance. Any such provision shall include provision for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Option. The foregoing provisions of this Section (f) shall similarly apply to successive reclassifications, capital reorganizations and changes of shares of Preferred Stock or Common Stock and to successive consolidations, mergers, sales or conveyances.

(g)    AMENDMENTS. This Option may only be amended in writing signed by both Patridge and the Holder.

(h)   MISCELLANEOUS.   This Option shall be governed by and construed in accordance with the laws of the State of New York without going effect to the conflict of laws principles thereof.  The parties hereto hereby, irrevocably and unconditionally, consent to the exclusive jurisdiction of the courts located in New York County, New York in connection with any lawsuit, claim or other proceeding related to this Option.  This Option may be executed in counterparts.  Facsimile signatures to this Option shall have the same legal validity as original signatures hereto.  All notices or other communications hereunder shall be in writing and shall be sent by hand or by registered or certified mail, return receipt required or by a recognized overnight courier service; if intended for Patridge shall be addressed to Patridge at 295 East Main Street, Suite 1, Ashland, Oregon 97520 or to such other address of which Patridge shall have given notice to the Holder in the manner herein provided; and if intended for the Holder shall be addressed to him at, 44 Wall Street, 2nd Floor, New York, New York 10005 or to such other address of which Holder shall have given notice to Patridge in the manner herein provided.  Any such notice shall be effective, immediately if delivered by hand, one (1) business day after delivery to a recognized overnight courier service or three (3) business days after delivery to the U.S. mail system.  This Option shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.

_____

WILLIAM PATRIDGE

_____

JONATHAN TURKEL

**Dated: June 13, 2007**

5

Exhibit E

Rosalind Davidowitz
44 Wall Street, 2nd floor
New York, NY 10005


July 8, 2008


VIA FEDEX


Mr. William Patridge
Chairman of the Board, CEO & President
ecoSolutions Intl
295 East Main Street
Suite 1
Ashland, Oregon  97520

Dear Mr. Patridge,

Enclosed please find a copy of the Option to purchase 380,000 shares of Preferred Stock of 360 Interchange, Inc. (now ecoSolutions Intl) (the "Company") dated June 13, 2007 issued by you to me (the "Option").

Pursuant to the terms of the Option, I hereby cashless exercise the Option into 376,380 shares of Preferred Stock (based upon the closing sales price of the Company's common stock of $1.05 per share on Pink Sheets LLC on July 7, 2008).  I further request the immediate conversion of the 376,380 shares of Preferred Stock into 3,763,800 shares of common stock of the Company.

Please issue a certificate for these shares of common stock and send the certificate to me.

Sincerely,

Rosalind Davidowitz


Enclosures



cc:  William Gould, Esq.

Leonard Katz
44 Wall Street, 2nd floor
New York, NY 10005
212-495-4040


July 8, 2008


VIA FEDEX


Mr. William Patridge
Chairman of the Board, CEO & President
ecoSolutions Intl
295 East Main Street
Suite 1
Ashland, Oregon 97520

Dear Bill,

Enclosed please find a copy of the Option to purchase 10,000 shares of Preferred Stock of 360 Interchange, Inc. (now ecoSolutions Intl) (the "Company") dated June 13, 2007 issued by you to me (the "Option").

Pursuant to the terms of the Option, I hereby cashless exercise the Option into 9,904 shares of Preferred Stock (based upon the closing sales price of the Company's common stock of $1.05 per share on Pink Sheets LLC on July 7, 2008). I further request the immediate conversion of the 9,904 shares of Preferred Stock into 99,040 shares of common stock of the Company.

As the option was granted more than one year ago, please issue a certificate for these shares of common stock without any legend and send the certificate to me.

Sincerely,

Leonard Katz
Leonard Katz


Enclosures


cc: William Gould, Esq.

Exhibit G

Jonathan Turkel
44 Wall Street, 2nd floor
New York, NY 10005
212-495-8271

July 8, 2008

<u>VIA FEDEX</u>

Mr. William Patridge
Chairman of the Board, CEO & President
ecoSolutions Intl
295 East Main Street
Suite 1
Ashland, Oregon 97520

Dear Bill,

Enclosed please find a copy of the Option to purchase 10,000 shares of Preferred Stock of 360 Interchange, Inc. (now ecoSolutions Intl) (the "Company") dated June 13, 2007 issued by you to me (the "Option").

Pursuant to the terms of the Option, I hereby cashless exercise the Option into 9,904 shares of Preferred Stock (based upon the closing sales price of the Company's common stock of $1.05 per share on Pink Sheets LLC on July 7, 2008). I further request the immediate conversion of the 9,904 shares of Preferred Stock into 99,040 shares of common stock of the Company.

As the option was granted more than one year ago, please issue a certificate for these shares of common stock without any legend and send the certificate to me.

Sincerely,

Jonathan Turkel

Enclosures

cc: William Gould, Esq.

Exhibit H

**EGS**

Ellenoff Grossman & Schole LLP

150 East 42nd Street
New York, NY 10017
Telephone: (212) 370-1300
Facsimile: (212) 370-7889
www.egsllp.com

ANTHONY GALANO, III
e-mail: agalano@egsllp.com
Direct Facsimile: (212) 370-0804

July 17, 2008

Via Federal Express and Facsimile
Mr. William Patridge
Chairman of the Board, CEO & President
ecoSolutions Intl
295 East Main Street
Suite 1
Ashland, Oregon  97520

**FILE COPY**

Dear Mr. Patridge:

We represent Rosalind Davidowitz, Leonard Katz and Jonathan Turkel (each an "Optionholder" and collectively the "Optionholders") in connection with the options to purchase Preferred Stock of 360 Interchange, Inc. (now ecoSolutions Intl) (the "Company") which they received from you on June 13, 2007 (the "Options").

Pursuant to the terms of the Options, on July 8, 2008 each Optionholder sent you and William Gould, Esq., the Company's counsel, by federal express a notice (the "Notice") to "cashless" exercise such Optionholder's Option and to immediately convert the Preferred Stock issuable upon such exercise into shares of Common Stock. A copy of these notices are enclosed herewith.

We are informed that Mr. Gould notified Mr. Turkel on July 14, 2008 that this was not a Company matter and that the Optionholders should deal directly with you.

To date, our clients have not received the shares issuable upon the exercise of the Options and the conversion of the Preferred Stock as set forth in the Notices. We are also informed that you have not returned two telephone messages left for you by Mr. Turkel on July 14, 2008.

Please be advised that in the event we do not hear from you by July 22, 2008, our clients have instructed us to commence legal proceedings against you in New York State Supreme Court, New York County.

Please be guided accordingly.

Ellenoff Grossman & Schole LLP

Mr. William Patridge
Chairman of the Board, CEO & President
ecoSolutions
July 17, 2008
Page 2

Very truly yours,

Anthony Galano, III

Enclosures

Jonathan Turkel
44 Wall Street, 2nd floor
New York, NY 10005
212-495-8271

July 8, 2008

<u>VIA FEDEX</u>

Mr. William Patridge
Chairman of the Board, CEO & President
ecoSolutions Intl
295 East Main Street
Suite 1
Ashland, Oregon 97520

Dear Bill,

Enclosed please find a copy of the Option to purchase 10,000 shares of Preferred Stock of 360 Interchange, Inc. (now ecoSolutions Intl) (the "Company") dated June 13, 2007 issued by you to me (the "Option").

Pursuant to the terms of the Option, I hereby cashless exercise the Option into 9,904 shares of Preferred Stock (based upon the closing sales price of the Company's common stock of $1.05 per share on Pink Sheets LLC on July 7, 2008). I further request the immediate conversion of the 9,904 shares of Preferred Stock into 99,040 shares of common stock of the Company.

As the option was granted more than one year ago, please issue a certificate for these shares of common stock without any legend and send the certificate to me.

Sincerely,

Jonathan Turkel

Enclosures

cc: William Gould, Esq.

Leonard Katz
44 Wall Street, 2nd floor
New York, NY 10005
212-495-4040

July 8, 2008

<u>VIA FEDEX</u>

Mr. William Patridge
Chairman of the Board, CEO & President
ecoSolutions Intl
295 East Main Street
Suite 1
Ashland, Oregon 97520

Dear Bill,

Enclosed please find a copy of the Option to purchase 10,000 shares of Preferred Stock of 360 Interchange, Inc. (now ecoSolutions Intl) (the "Company") dated June 13, 2007 issued by you to me (the "Option").

Pursuant to the terms of the Option, I hereby cashless exercise the Option into 9,904 shares of Preferred Stock (based upon the closing sales price of the Company's common stock of $1.05 per share on Pink Sheets LLC on July 7, 2008). I further request the immediate conversion of the 9,904 shares of Preferred Stock into 99,040 shares of common stock of the Company.

As the option was granted more than one year ago, please issue a certificate for these shares of common stock without any legend and send the certificate to me.

Sincerely,

Leonard Katz

Leonard Katz

Enclosures

cc: William Gould, Esq.

Rosalind Davidowitz
44 Wall Street, 2nd floor
New York, NY 10005

July 8, 2008

<u>VIA FEDEX</u>

Mr. William Patridge
Chairman of the Board, CEO & President
ecoSolutions Intl
295 East Main Street
Suite 1
Ashland, Oregon 97520

Dear Mr. Patridge,

Enclosed please find a copy of the Option to purchase 380,000 shares of Preferred Stock of 360 Interchange, Inc. (now ecoSolutions Intl) (the "Company") dated June 13, 2007 issued by you to me (the "Option").

Pursuant to the terms of the Option, I hereby cashless exercise the Option into 376,380 shares of Preferred Stock (based upon the closing sales price of the Company's common stock of $1.05 per share on Pink Sheets LLC on July 7, 2008). I further request the immediate conversion of the 376,380 shares of Preferred Stock into 3,763,800 shares of common stock of the Company.

Please issue a certificate for these shares of common stock and send the certificate to me.

Sincerely,

Rosalind Davidowitz

Enclosures

cc: William Gould, Esq.

 **Shipment Receipt**

**Address Information**

| Ship to: | Ship from: |
|---|---|
| Mr. William Patridge | Anthony Galano III, Esq. |
| ecoSolutions Intl | Ellenoff Grossman & Schole, LLP |
| 295 East Main Street | 150 East 42nd Street |
| Suite 1 | 11th Floor |
| Ashland, OR | New York, NY |
| 97520 | 10017 |
| US | US |
| 000.000.0000 | 2123701300 |

**Shipping Information**
Tracking number: 799883671837
Ship date: 07/17/2008
Estimated shipping charges: 29.99

**Package Information**
Service type: Standard Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1LBS
Declared value: 0.00USD
Special Services: Adult signature required
Pickup/Drop-off: Give to scheduled courier at my location

**Billing Information**
Bill transportation to: Sender
Your reference: 10459.007
P.O. no.:
Invoice no.:
Department no.:

**Thank you for shipping online with Fedex ShipManager at fedex.com.**

**Please Note**
FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or speical is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g., jewelry, precious metals, negotiable instruments and other items lised in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

# EGS

Ellenoff Grossman & Schole LLP

370 Lexington Avenue
New York, NY 10017
Telephone: 212.370-1300
Facsimile:  212.370-0804
egs@egsllp.com

## FACSIMILE TRANSMISSION

| | | | |
|---|---|---|---|
| **To:** | Mr. William Patridge, Chairman of Board, CEO & President | **Client No.:** | 10459.007 |
| **Company:** | ecoSolutions Intl | **Date:** | July 17, 2008 |
| **Fax No.:** | (541)-552-1090 | **Sender's phone:** | (212) 370-1300 x145 |
| **From:** | Anthony Galano, III, Esq. | **Sender's E-mail:** | agalano@egsllp.com |
| **Subject:** | Options of Rosalind Davidowitz, Leonard Katz and Jonathan Turkel to purchase Preferred Stock of 360 Interchange, Inc. (now ecoSolutions Intl) | | |
| **Number of Pages (including cover):** | 6 | | |

MESSAGE:   Please see the enclosed letter.

THIS FACSIMILE TRANSMISSION CONTAINS CONFIDENTIAL AND/OR LEGALLY PRIVILEGED INFORMATION FROM THE LAW FIRM OF ELLENOFF GROSSMAN & SCHOLE LLP, INTENDED FOR USE BY, AND PUBLICATION TO, ONLY THOSE INDIVIDUALS OR ENTITIES DESIGNATED ON THIS TRANSMISSION SHEET. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS FACSIMILE TRANSMISSION TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU ARE STRICTLY PROHIBITED FROM COPYING, DISTRIBUTING, DISSEMINATING, OR UNDERTAKING ANY ACT BASED UPON, THE CONTENTS OF THIS FACSIMILE TRANSMISSION. IF YOU HAVE RECEIVED THIS FACSIMILE TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE ABOVE NUMBER SO THAT WE MAY ARRANGE TO RETRIEVE THIS FACSIMILE TRANSMISSION AT NO COST TO YOU. THANK YOU.

{00081235.DOC.1}

```
                    ************************
                    ***   TX REPORT   ***
                    ************************


TRANSMISSION OK

TX/RX NO                 1021
DESTINATION TEL #        915415521090
DESTINATION ID
ST. TIME                 07/17 16:06
TIME USE                 00'46
PAGES SENT               6
RESULT                   OK
```